UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
TENNENBAUM LIVING TRUST *et al.*,                                       :
                                                                        :
                                        Plaintiffs,                     :
                                                                        :          20 Civ. 6938 (JPC) (JLC)
                        -v-                                             :
                                                                        :                 ORDER
GCDI S.A. f/k/a TGLT S.A.,                                              :
                                                                        :
                                        Defendant.                      :
                                                                        :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

On July 17, 2023, the Court issued Findings of Fact and Conclusions of Law, in which it held that Defendant GCDI S.A. f/k/a TGLT S.A.'s failure to make interest payments to Plaintiffs Tennenbaum Living Trust and Merkin Family Foundation breached the indenture, Dkt. 83-15 ("Indenture"), governing notes (the "Notes") that Defendant issued in 2017 and that Plaintiffs purchased.  The parties have now each filed proposed judgments for the Court's consideration. Dkts. 116-1, 117-1.  Those proposed judgments differ in two material respects: first, whether Plaintiffs should be awarded declaratory relief in addition to damages and, second, in the method to calculate the prejudgment interest Defendant owes to Plaintiffs.  For reasons that follow, the Court exercises its discretion not to grant the declaratory relief that Plaintiffs request, and holds that the Indenture requires prejudgment interest in the amount yielded by Defendant's interpretation of the Indenture.

While Plaintiffs' Complaint sought an award of damages reflecting their right to payment of interest owned on their Notes, Dkt. 1 ¶¶ 30-32, at 11, the Complaint did not seek declaratory relief, *see generally id*; *see also id.* at 12 (Request for Relief).  On April 5, 2022, the Court denied Plaintiffs' request to amend the Complaint in a manner that would have added, *inter alia*, requests

for declarations that the mandatory conversion of their Notes into equity was invalid and that their Notes remain valid and enforceable.  Dkt. 73; *see* Dkt. 62-1 ¶¶ 2, 86-93 (proposed amended complaint).  Plaintiffs ask the Court to grant declaratory relief notwithstanding the omission of a request for such relief in their Complaint and the absence of any amended complaint adding such a request.

"Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).  As the Second Circuit has explained, a court should consider six factors, "to the extent they are relevant in a particular case," in deciding whether to issue a declaratory judgment:

> (1) whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether such a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; (5) whether there is a better or more effective remedy; and (6) whether concerns for judicial efficiency and judicial economy favor declining to exercise jurisdiction . . . .

*Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99-100 (2d Cir. 2023) (internal quotation marks and alterations omitted).

The Court finds the first two factors primarily relevant.  The Findings of Fact and Conclusions of Law addressed and resolved the parties' disputes as to whether the Notes remain valid, as Plaintiffs maintained, and whether the Notes were mandatorily converted into Defendant's common stock as a result of Defendant's offerings of preferred shares in December 2019, as Defendant contended.  *See, e.g.*, *Tennenbaum Living Tr. v. GCDI S.A.*, No. 20 Civ. 6938 (JPC), 2023 WL 4558736, at *2 (S.D.N.Y. July 17, 2023) ("[T]he Court concludes that section 1301 of the Indenture did not authorize the Mandatory Conversion of the Notes and, therefore, that

the Mandatory Conversion was invalid.  Plaintiffs continue to own the Notes they had purchased, and they are owed interest on those Notes as it comes due.").  Because the Court's Findings of Fact and Conclusions of Law settled those questions, no legal uncertainty or unclarity remains that declaratory relief could settle or clarify.  Declaratory relief therefore would not "serve a useful purpose in clarifying or settling the legal issues involved" in this case, nor would it otherwise relieve any uncertainty as to the outcome.  *Admiral Ins. Co.*, 57 F.4th at 99-100.  Plaintiffs speculate that a declaratory judgment will assist their efforts to enforce the Court's damages judgment in Argentina.  *See* Dkt. 117 at 3 ("[T]he Trusts expect that it will be necessary to enforce this Court's judgment in Argentina and that defendant will resist enforcement—as it is already doing here.").  But Plaintiffs provide no substantiation for their concern that Defendant will not comply with the Court's judgment, and their unsupported speculation that they may encounter difficulties enforcing a judgment does not establish that declaratory relief would serve a useful purpose in this case.  The Court therefore declines to issue a declaratory judgment.

Turning to the computation of prejudgment interest, section 301 of Indenture provides that the Notes

> shall bear interest at the rate per annum of (i) 8.000% from (and including) the Issue Date to (but not including) the first anniversary of the Issue Date; (ii) 9.000% from (and including) the first anniversary of the Issue Date to (but not including) the second anniversary of the Issue Date; and (iii) 10.000% from (and including) the second anniversary of the Issue Date to (but not including) the Maturity Date (the "Interest Rate") . . . .  If, at any time, the Company fails to timely pay the principal (including any Redemption Price or Repurchase Price), premium (if any), interest, Additional Amounts and/or other amounts due under the Securities, the Company shall pay interest on the unpaid amount from (and including) the date of such failure to (but not including) the actual payment date, at a rate per annum of (i) 14.000% from (and including) the Issue Date to (but not including) the first anniversary of the Issue Date; (ii) 15.000% from (and including) the first anniversary of the Issue Date to (but not including) the second anniversary of the Issue Date; and (iii) 16.000% from (and including) the second anniversary of the Issue Date to (but not including) the Maturity Date (the "Default Interest Rate").  For the avoidance of doubt, the Default Interest Rate shall replace and supersede the Interest Rate from (and including) the date of such failure and shall not impair in any way the Company's obligation to pay any principal (including any Redemption Price or

Repurchase Price), premium (if any), interest, Additional Amounts and/or other amounts due under the Securities through the date of such failure.

Indenture § 301.  The parties agree that Defendant must pay Plaintiffs some interest at the Default Interest Rate of 16% given that the Notes were issued on August 3, 2017.  *See Tennenbaum Living Tr.*, 2023 WL 4558736, at *3 (stating issue date).  They disagree, however, about the debts to which that Default Interest Rate applies.  Absent any failure of payment, the Indenture obligated Defendant to pay annual interest on the principal due under the Notes.  Indenture § 301.  The amount of such interest, in turn, would be computed using the Interest Rate as established in section 301 of the Indenture.  *Id.*  Defendant argues that the failure to make a payment does not change the rate employed to compute these annual interest payments going forward:  as would be the case prior to any non-payment, the interest due on the principal continues to be computed using the Interest Rate as set in section 301.  Dkt. 116 at 3-4.  The Default Interest Rate, then, would be used only to compute the interest due on a missed interest payment; the Default Interest Rate would not become the interest rate due on the principal.  By contrast, Plaintiffs argue that after Defendant missed an interest payment, the Default Interest Rate superseded the Interest Rate in computing all interest payments due going forward, to include both the rate for the payment of interest on principal and the rate for the payment of interest on any missed principal-based interest payment.  *See* Dkt. 117 at 3-4.

The plain text of the Indenture favors Defendant's interpretation.  Under section 301, and as relevant here, if Defendant "fails to timely pay . . . interest, . . . [it] shall pay interest on the unpaid amount from (and including) the date of such failure to (but not including) the actual payment date, at a rate per annum of . . . 16.000%."  Indenture § 301.  Thus, under the plain language of section 301, the interest paid at the higher rate is "interest *on the unpaid amount*."  *Id.* (emphasis added).  And because the phrase "the unpaid amount" immediately follows a clause discussing Defendant's failure to pay interest (or other required payments) when due, that phrase

is most naturally understood to refer to the unpaid payments that have already come due, not the unpaid payments (such as future interest payments) that will come due under the Indenture in the future.  Resisting this reading, Plaintiffs rely heavily on language in the Indenture providing that "the Default Interest Rate shall replace and supersede the Interest Rate."  Dkts. 115 at 2, 117 at 3.  However, this phrase does not clarify whether the Default Interest Rate replaces the Interest Rate only as to payments that have already come due or instead as to payments that will come due in the future.  Furthermore, viewing the "replace and supersede" language in context renders Plaintiffs' interpretation even less plausible.  The full sentence reads:

> For the avoidance of doubt, the Default Interest Rate shall replace and supersede the Interest Rate from (and including) the date of such failure and shall not impair in any way [Defendant's] obligation to pay any principal (including any Redemption Price or Repurchase Price), premium (if any), interest, Additional Amounts and/or other amounts due under the Securities through the date of such failure.

Indenture § 301.  The remainder of the sentence thus reiterates Defendant's continuing obligation to make other payments due under the Notes.  As such, the phrase "the Default Interest Rate shall replace and supersede the Interest Rate" is most naturally interpreted as simply clarifying that the change from the Interest Rate to the Default Interest Rate does not waive Defendant's future obligations to make payments under the Indenture.  If anything, the provision weakens Plaintiffs' argument:  confirming that the application of the Default Interest Rate does not impair Defendant's pre-existing obligation to make interest payments on principal suggests that Defendant does not have a different obligation that would require it to use the Default Interest Rate when making those payments.  Thus, because the Indenture clearly applies the Default Interest Rate to "the unpaid amount," and because no other language in section 301 plausibly requires Defendant to use the Default Interest Rate in calculating interest on principal, the Court accepts Defendant's interpretation of the Indenture in this respect.

By August 11, 2023, Plaintiffs and Defendant shall submit a joint revised proposed judgment computing interest due as of that date, following the interpretation of the Indenture and applicable interest rates set forth above.[1]

SO ORDERED.

Dated: August 8, 2023
New York, New York

_____
JOHN P. CRONAN
United States District Judge

---

[1] Plaintiffs' request for damages includes a *pro rata* amount of the interest payment due under the Notes on August 15, 2023, a date that has not yet passed. *See* Dkt. 117 at 3-4 & n.4. Because Defendant cannot be liable for failing to make a payment that it is not yet due, the damages awarded to Plaintiffs should not encompass that future interest payment obligation.